AO 451  (Rev. 12/12)   Clerk's Certification of a Judgment to be Registered in Another District

# UNITED STATES DISTRICT COURT

### for the

### Southern District of Ohio  ▾

FILED by _____ D.C.

FEB 1 3 2015

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

| | |
|---|---|
| Williamson et al. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action  No. 2:06-cv-292 |
| Recovery Limited Partnership et al. | ) |
| *Defendant* | ) |

## 15-mc-20617-Gayles/Turnoff

## CLERK'S CERTIFICATION OF A JUDGMENT TO BE REGISTERED IN ANOTHER DISTRICT

I certify that the attached judgment is a copy of a judgment entered by this court on *(date)*   06/25/2013   .

I also certify that, as appears from this court's records, no motion listed in Fed. R. App. P. 4(a)(4)(A) is pending before this court, the time for appeal has expired, and no appeal has been filed or, if one was filed, it is no longer pending.

Date:   2/11/2015

CLERK OF COURT

*Melissa Saddler*

*Signature of Clerk or Deputy Clerk*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MICHAEL H. WILLIAMSON, et al.,**

       **Plaintiffs,**

       **v.**

**RECOVERY LIMITED
PARTNERSHIP, et al.,**

       **Defendants.**

                     **Case No. 2:06-cv-292
JUDGE ALGENON L. MARBLEY
Magistrate Judge Terence P. Kemp**

**OPINION AND ORDER**

This matter is before the Court on the Dispatch Printing Company and Donald C. Fanta's

Motion for Attorney Fees and Expenses for Contempt Proceedings and Contempt Appeal

("Renewed Motion for Attorney Fees") (Doc. No. 702), which is **GRANTED IN PART AND**

**DENIED IN PART**, and the Supplemental Motion in Support of the Dispatch Printing Company

and Donald C. Fanta's Renewed Motion for Attorney Fees ("Supplemental Motion for Attorney

Fees") (Doc. No. 767), which is **GRANTED**

**I. Background**

On October 16, 2007, the Dispatch Printing Company and Donald C. Fanta ("Plaintiffs")

filed a motion requesting that this Court find the Defendants in civil contempt for their alleged

failure to comply with this Court's Orders ("Motion for Contempt"). (Doc. No. 254.) In that

motion, the Plaintiffs claim that they were "forced to pay additional attorneys' fees and legal

expenses in connection with [their] efforts to enforce compliance with this Court's Orders" and

that they were required to pay "more than double the amount" of accounting fees as necessary

because of the Defendants' contemptuous conduct. *Id.* at 12.  The Plaintiffs asserted that the

Defendants' conduct increased the accounting fees the Plaintiffs incurred by more that $290,000 and caused the Plaintiffs to incur attorney fees and costs in excess of $80,000. *Id.* at 3.

On September 30, 2009, the Court granted in part and denied in part the Plaintiffs' Motion for Contempt and entered a judgment of civil contempt ("Contempt Judgment") against Defendants Columbus Exploration, LLC ("CX"), Recovery Limited Partnership ("RLP"), Tommy Thompson, Gilman Kirk, W. Arthur Cullman, Michael Ford and James Turner. (Doc. No. 480.) In the Plaintiffs' Motion for Contempt, they relied upon numerous allegedly contemptuous actions of the Defendants. The Court found in favor of the Plaintiffs on some of their specified complaints, but also found that the Plaintiffs' conduct added to the delay and the additionally incurred fees. The Court, therefore, reduced by one-third the amount of accounting fees awarded to the Plaintiffs and reduced by one-half the amount of attorney fees. The Court then held the Defendants jointly and severally liable to pay these reduced amounts, which totaled "$193,892 for accounting fees and $41,090 in attorney fees." *Id.* at 16.

On October 8, 2009, the Defendants appealed the Court's Contempt Judgment to the United States Court of Appeals for the Sixth Circuit. (Doc. No. 482.)

On November 16, 2009, the Plaintiffs filed a properly supported request for reimbursement of $160,053.71 in attorney fees and costs they incurred in prosecuting their Motion for Contempt ("Motion for Attorney Fees"). (Doc. No. 496.) The Plaintiffs applied the same apportionment that the Court utilized in its Contempt Judgment and request reimbursement of $80,026.85, which is one-half of the total amount of their attorney fees and costs. The Plaintiffs also supplied evidence reflecting that they incurred $6,152.50 in attorney fees and expenses to brief and file their Motion for Attorney Fees.

2

On December 7, 2009, the Court held the Plaintiffs' Motion for Attorney Fees in abeyance pending the outcome of the Defendants' appeal of the Contempt Judgment.  (Doc. No. 505.)  Then on September 24, 2010, the Court denied without prejudice the Motion for Attorney Fees, subject to reconsideration after the appeal was finalized.  (Doc. No. 527.)

On January 20, 2012, the Sixth Circuit affirmed the Contempt Judgment as to six of the Defendants and reversed with regard to W. Arthur Cullman.  (Doc. No. 694.)  The Sixth Circuit denied the Defendants' petition for rehearing and hearing *en banc*.  On June 7, 2012, the Defendants filed a Petition for a Writ of *Certiorari* with the United States Supreme Court, which was denied on October 15, 2012.  The Plaintiffs submit evidence showing that they incurred $59,352.50 in attorney fees and expenses in connection with defending the Court's Contempt Judgment during this appeal process.

The Plaintiffs have now filed their Renewed Motion for Attorney Fees in which they request attorney fees and expenses incurred in connection with the above delineated contempt proceedings.  The Defendants filed a combined response in opposition to the Plaintiffs' Renewed Motion for Attorney Fees (Doc. No. 740), and the Plaintiffs filed a reply in support of their motion (Doc. No.765).  In their renewed motion, the Plaintiffs indicate that they are not moving against CX because that defendant filed for bankruptcy in the United States Bankruptcy Court for the District of Delaware on March 21, 2012.  (Doc. No. 702 at 2, fn.1.)  The Plaintiffs have since filed their Supplemental Motion for Attorney Fees asking that their Renewed Motion for Attorney Fees apply equally to CX.  (Doc. No. 767.)

3

On August 8, 2012, the Plaintiffs filed a supplemental memorandum in which they submit evidence that they incurred $14,940.65 in attorney fees and expenses in connection with preparing the Renewed Motion for Attorney Fees. (Doc. No. 771.)

On August 13, 2012, the Court held an oral hearing on the Plaintiffs' Renewed Motion for Attorney Fees (Doc. No. 781), at which it heard oral argument and accepted evidence (Doc. No. 781-1). All parties were represented at that hearing and a transcript of the hearing is filed on this Court's docket. (Doc. No. 816.)

On January 16, 2013, the judge presiding over this action recused himself and the undersigned was randomly assigned to this case. (Doc. No. 863.) The Court has reviewed all of the briefing, evidence, and prior decisions related to the Plaintiffs' Renewed Motion for Attorney Fees, the transcript of the oral hearing held on that motion, and the evidence taken at that hearing.

## II. Analysis

### A. Introduction

Where a party has brought a successful motion for contempt, the movant is entitled to recover from the contemnors the attorney fees it incurred in bringing and prosecuting the motion. *Conrail v. Yashinsky*, 170 F.3d 591, 596 (6th Cir. 1999) (affirming district court's assessment of attorney fees for successful prosecution of contempt motion); *Big Lots Stores, Inc. v. Jaredco, Inc.*, 182 F. Supp. 2d 644, 647 (S.D. Ohio 2002) ("the Court found Goldman in contempt" and ordered him to, *inter alia*, "pay attorney fees in the amount of $12,595" to the plaintiff).

**B. The Plaintiffs' Supplemental Motion For Attorney Fees**

Because Defendant CX had filed bankruptcy, the Plaintiffs did not move against it in their Renewed Motion for Attorney Fees. In the Plaintiffs' Supplemental Motion for Attorney Fees, they inform the Court that the bankruptcy action filed by CX has been dismissed. The Plaintiffs, therefore, request that their Renewed Motion for Attorney Fees apply equally to CX. CX has not opposed that motion.

The Contempt Judgment was issued against several defendants, including CX. CX is therefore a proper party from whom to seek the reimbursement requested by the Plaintiffs in their Renewed Motion for Attorney Fees. Therefore, the Court finds the Plaintiffs' request well taken and **GRANTS** their Supplemental Motion for Attorney Fees. (Doc. No. 767.)

**C. The Plaintiffs' Renewed Motion For Attorney Fees**

In the Plaintiffs' Renewed Motion for Attorney Fees they request $155,593.76, apportioned as follows:

1. $80,026.85 for prosecution of their Motion for Contempt, incurred from September 2007 through December 2008, which constitutes a fifty percent reduction in their total fees of $160,053.71, in accordance with the reduction the Court made in the Plaintiffs' fees in its Contempt Judgment.

2. $6,152.50 for the preparation and filing of the Plaintiffs' Motion for Attorney Fees, incurred during October and November 2009.

3. $54,473.75 incurred in defending the Defendants' appeal of the Contempt Judgment, which was affirmed by the Court of Appeals as to all of the Defendants except W. Arthur Cullman, and the Defendants' subsequent petitions for rehearing, hearing *en banc*, and

5

*certiorari*, which were all denied.  The Plaintiffs have subtracted $4,878.75 from their attorney

fees, which is the amount of fees that relate solely to Mr. Cullman, (*i.e.*, total fees of $59,352.50

- $4,878.75 in fees related to Cullman = $54,473.75).

  4.  $14,940.65 for the preparation and filing of the Plaintiffs' Renewed Motion for

Attorney Fees, incurred from May 2012 through August 2012.

  The Defendants argue that the Plaintiffs are not entitled to the amount of attorney fees

and costs they request because they (a) have failed to account for the findings of the Sixth

Circuit on appeal, (b) should have filed the request before the Sixth Circuit, (c) have already

been awarded attorney fees as part of the Contempt Judgment, (d) were only partially successful

on their Motion for Contempt, (e) attorney fees are not available for preparing a motion for

attorney fees, and (f) because the Plaintiffs' fees are unreasonable.

### 1. Sixth Circuit Decision

  The Defendants contend that the Plaintiffs' request for attorney fees fails to take into

account the fact that the Sixth Circuit reversed this Court's judgment with regard to one out of

the seven defendants against whom the Contempt Judgment issued.  Specifically, the Sixth

Circuit found that CX Director and RLP Manager W. Arthur Cullman resigned before the

conduct occurred that was the basis of the Contempt Judgment, and therefore, a judgment of

contempt against him was inappropriate.

  In their briefing, the Plaintiffs contend that reversal as to one of the Defendants is not

reason to reduce their fee award.  The Plaintiffs posit that, "[w]here, as here, a plaintiff's claims

against the defendants arise from a common core of facts and related legal theories, the fact that

the plaintiff does not prevail against all of the defendants is not a basis for reducing the

plaintiff's fee award." (Doc. No. 765 at 2–3) (citing *Welton v. Osborn*, 124 F. Supp. 2d 1114

(S.D. Ohio 2000); *Dowling v. Litton Loan Servicing, LP*, 320 Fed. Appx. 442, 448 (6th Cir.

2009); *Wayne v. Village of Sebring*, 36 F.3d 517, 532 (6th Cir. 1994); and, *Thurman v. Yellow

Freight Systems*, Inc., 90 F.3d 1160, 1169 (6th Cir. 1996)).

The Court need not determine whether these cases provide support for the Plaintiffs'

proposition because at the oral hearing the Plaintiffs offered to reduce the amount of attorney

fees requested to reflect the removal of all fees that related solely to Mr. Cullman.  That amount

totaled $4,878.75.  Consequently, the Court finds that the Plaintiffs' request for attorney fees has

accounted for the Sixth Circuit's finding on appeal.

### 2.  Motion for Attorney Fees Filed in District Court or Circuit Court

The Defendants contend that, with respect to the attorney fees the Plaintiffs incurred

defending the contempt judgment on appeal, the Plaintiffs should have filed their fee application

with the Sixth Circuit, not this Court.  (See Hearing Tr. at 67) ("there is a motion for fees or

request for fees in the Sixth Circuit on appeal, the Sixth Circuit would typically grant that and

send it back down to the trial Court to determine what those fees are").  This Court disagrees.

As the Plaintiffs correctly point out, where, as here, a party incurs legal expenses

defending a lower court's contempt judgment on appeal, the proper forum for the party to file its

fee petition is the trial court, not the appellate court. *See, e.g., Liberis v. Craig*, 845 F.2d 326,

1988 WL 37450, at *8 (6th Cir. 1988) ("[W]e find that the bankruptcy judge did not abuse his

discretion by awarding attorneys' fees and expenses incurred by the trustees as a result of the

plaintiffs' unsuccessful appeals of the orders holding them in contempt.").  Moreover, at the oral

hearing on the Plaintiffs' motion, in response to the Court's questioning, the Defendants

7

admitted that there was no jurisdictional ban to this Court's consideration of the Plaintiffs'
request, only that they believed it made more sense for the Sixth Circuit to do so.  (Doc. No. 816
at 67–68.)  Thus, the Court will not dismiss the Plaintiffs' Motion for Attorney Fees in favor of
its re-filing the motion before the Sixth Circuit.

### 3. Attorney Fees Within The Contempt Judgment

The Defendants argue that the Plaintiffs' request for an attorney fees award is improper
because the Defendants "have already been punished harshly" by virtue of the Court's Contempt
Judgment.  (Doc. No. 740 at 3.)  The Defendants' argument, however, misses the mark.

The Court's Contempt Judgment was not meant to punish the Defendants.  Instead, it was
meant to compensate the Plaintiffs for the losses they suffered as a result of the Defendants'
contemptuous conduct.  As the Sixth Circuit explained in *Joy & Middlebelt Sunoco, Inc. v.
Fusion Oil, Inc.*,:

> Civil contempt is distinguished from criminal contempt in that civil contempt orders
> impose remedial damages and sanctions intended to coerce compliance with court
> orders, whereas criminal contempt orders punish a party for past behavior.
> *International Union, UMW v. Bagwell*, 512 U.S. 821, 829 (1994) ("[A] contempt fine
> accordingly is considered civil and remedial if it . . . compensate[s] the complainant
> for losses sustained.")

179 F. App'x 301, 303–04 (6th Cir. 2006) (parallel citations omitted; omission in original).

In the instant action, the Court's Contempt Judgment was for civil contempt.  Therefore,
contrary to the Defendants' suggestion, the Judgment was not punitive in nature.  Likewise,
awarding the Plaintiffs the attorney fees they incurred prosecuting the contempt proceedings
before this Court and then defending the Contempt Judgment on appeal constitutes a
compensatory remedy, not a punitive one.  *See e.g., Liberis v. Craig*, 845 F.2d 326, 1988 WL
37450, at *7 (6th Cir. 1988) ("[The contemnors'] unsuccessful appeals of the civil contempt

order forced the trustee to incur expenses in defending the court's order.  The trustee's appellate expenses stemmed directly from [the contemnors'] intentional disregard of the initial order of the bankruptcy court.").  Consequently, the Court finds unpersuasive the Defendants' position that their previous payment of attorney fees should serve to exempt them from the Plaintiffs' current request.

### 4. Partial Success On Original Request For Contempt

The Plaintiffs request fifty percent of the attorney fees they incurred as a result of their prosecution of their Motion for Contempt, indicating that they request this portion because they "were partially successful on their contempt motion."  (Doc. No. 702 at 8–9) (relying on *Robin Woods, Inc. v. Woods*, 28 F.3d 396 (3d Cir. 1994) (affirming the district court's judgment awarding the plaintiffs sixty percent of their attorney fees and expenses incurred in connection with their partially successful contempt motion)).  Out of the seven complaints raised in their Motion for Contempt, the Court found that they had proven contemptuous conduct on two.

Specifically, the Plaintiffs moved for contempt against the Defendants because they allegedly:  (1) failed to meet a 60-day deadline; (2) refused to produce photocopies as a means of delay; (3) violated the Court's February 1, 2007 Order on the Defendants' Motion to Limit Photostatic Copying, Request for *In Camera* Inspection and to Hold the Defendants in Contempt; (4) required the accountants to bring with them to audits their own photocopier; (5) utilized "no copy" paper; (6) failed timely to produce inventories regarding the recovered treasure; and (7) maintained that they did not possess marketing plans, strategies and sales reports.  (Doc. No. 480 at 4.)  The Court specifically found in favor of the Plaintiffs on complaints (6) and (7):

The Court finds that the entities willfully violated the Consent Order of this Court by failing to timely deliver to [the accountants] documents described in Paragraph 2 of the Order. The Court also finds that the delay added significant cost and delay in completing the audit.

. . . .

It is clear that, following the Order of April 30, 2007, the entities did not comply with the Court's order for over eleven months. Such delay was contemptuous and caused additional expense to the Plaintiffs.

*Id.* at 12–13. The Court then went on to "conclude[] that the individual directors and officers [we]re also in willful contempt of the Court's prior orders." *Id.* at 14.

The Defendants argue that the Plaintiffs are not entitled to fifty percent of their fees because they did not succeed on fifty percent of the complaints brought in their Motion. The Defendants' argument is not well taken.

Initially, the Court notes that, as counsel for the Plaintiffs suggested at the oral hearing, this Court's Order is broader than finding misconduct on only two specific items. (Bradley T. Ferrell Testimony, Doc. No. 816 at 48.) After finding the entities and individuals in contempt, the Court stated:

The record in this case discloses several years of contentious litigation caused in major part by the refusal of the Defendants to tender documents required to be disclosed to the Accountants by the Consent Order. Shortly after the Consent Order was entered, the Court found CX and RLP in contempt for refusing to tender the inventory of the gold, records of sales, minutes of meetings, and other required documents. In the same Order, the Court reserved for a later date the issue of sanctions, in the vain hope that prompt compliance with the Consent Order would follow.

. . . .

Nonetheless, the Court is certain that the Defendants' conduct caused significant delay and expense. The accounting was sandbagged by the Defendants through a variety of means. What should have taken several months has taken several years.

10

(Doc. No. 480 at 15.)

Further, the Court lowered the fees awarded in the Contempt Judgment not only because of the Plaintiffs' partial success but also because of the Plaintiffs' conduct that contributed to the delay. In this regard the Court explained:

> The Court acknowledges that the fees and expenses sought by the Plaintiffs include the cost of several matters that have not been found to constitute contempt of court, as determined in this Order. Consequently, the Plaintiffs are not entitled to the entirety of the costs and expenses alleged. Further as this Opinion notes, this case has been marked by a great deal of needless contention, which has no doubt added to the fees sought.

Id.

Therefore, the reduction of the amount awarded in attorney fees in the Contempt Judgment was due not only to the Plaintiffs' partial success but was also based on the Plaintiffs' own conduct. Contrarily, here, only the Plaintiffs' partial success is in play. As the Court explained during the oral hearing, a portion of its reduction in fees in the Contempt Judgment "had to do with the course of the accounting that took place and the number of motions that were filed on all sides[,]" which is "not" the situation that is currently before the Court. (Doc. No. 816 at 56.) That is, the fees the Plaintiffs currently request reflect only the briefings filed in the contempt proceedings, which were not excessive. *See id.*

That being said, the Court does find that the Plaintiffs' partial success on their original Motion for Contempt necessitates a reduction in fees. As the Court recognized in its Contempt Judgment, "there is simply no divining rod" it can utilize to precisely measure the percentage of reduction of attorney fees that is appropriate. (Doc. No. 480 at 15.) Therefore, assessing the circumstances presented here, the Court finds that the fifty percent reduction already taken by the Plaintiffs more than accounts for the Plaintiffs' partial success on their Motion for Contempt.

11

Accordingly, the Court will not order any further reduction in the Plaintiffs' requested attorney fees.

### 5. Attorney Fees For Preparing a Motion for Attorney Fees

The Defendants assert that the Plaintiffs are not entitled to recover the attorney fees and expenses they incurred in preparing their motions for attorney fees. The Defendants concede that the case law cited by the Plaintiffs allows for the recovery of attorney fees incurred in preparing and filing a fee petition. They contend, however, that those cases are inapplicable because, unlike here, they involve parties who were enforcing statutory attorney fee provisions. In reply, the Plaintiffs contend:

> Federal courts uniformly hold that, where a party has a right to recover the attorney fees it incurred in prosecuting the underlying action, it also has a right to recover the attorney fees it incurs in preparing the fee petition. The courts aren't concerned with whether the right to those fees arises pursuant to statute, or under the common law of contempt; what matters is that there is some source of law entitling the party to its attorney fees.
>
> Indeed, a number of federal courts have expressly recognized that, in contempt cases such as this one, the prevailing party is entitled to recover the attorney fees incurred in preparing its fee petition.

(Doc. No. 765 at 15) (citing *LeMaster v. Bull*, 581 F. Supp. 1170, 1176 (E.D. Pa. 1984); *Cricket Communications, Inc. v. Talk Til You Drop Wireless, Inc.*, No. 3:09-0128, 2009 WL 5170201, at *3 (M.D. Tenn. Dec. 18, 2006); *Santa Fe Properties, Inc. v. French & French Fine Properties, Inc.*, No. CIV-04-0518, 2006 WL 4061184, at *3 (D. N.M. Sept. 30, 2009). The Plaintiffs' arguments are not well taken.

In awarding attorney fees for time spent pursuing the recovery of attorney fees, the Sixth Circuit regularly relies on the policies underlying the statutory fee provisions. For example, in *Weisenberger v. Huecker*, the appellate court explained:

> When Congress passed the [Civil Rights Attorney's Fees Awards Act of 1976, 42
> U.S.C. § 1988] its basic purpose was to encourage the private prosecution of civil
> rights suits through the transfer of the costs of litigation to those who infringe upon
> basic civil rights. If a successful party in a civil rights suit is awarded attorney's fees
> under the Act and he cannot secure attorney's fees for legal services needed to
> defend the award on appeal, the underlying Congressional purpose for the Act would
> be frustrated.

593 F.2d 49, 53–54 (6th Cir.1979).

Similarly, in a civil rights case the Sixth Circuit explained:

> The cases from this and other circuits uniformly hold that a lawyer should
> receive a fee for preparing and successfully litigating the attorney fee case after the
> original case is over, although in the private market place, lawyers do not usually
> charge, and clients do not usually pay, for the time it takes lawyers to calculate their
> fees. See cases collected and discussed in *In re Nucorp Energy, Inc.*, 764 F.2d 655,
> 660 (9th Cir. 1985). The legislative intent behind attorney fee statutes, however, was
> to encourage lawyers to bring successful civil rights cases, not successful attorney
> fee cases. The attorney fee case is not the case Congress expressed its intent to
> encourage; and in order to be included, it must ride piggy-back on the civil rights
> case.

*Coulter v. Tennessee*, 805 F.2d 146, 151 (6th Cir. 1986) (limiting fees for preparing the fee

application to approximately three percent of the hours allowed in the main case). The *In re*

*Nucorp Energy* case to which the *Coulter* court referred also highlights the strength of the

Defendants' position:

> Other circuit courts have similarly concluded that statutory fee award
> provisions should be read as authorizing compensation for time spent litigating fee
> awards. Courts have consistently awarded such compensation in cases under: (1)
> the Civil Rights statutes, 42 U.S.C. § 1988 (Fees Act), *see, e.g., Johnson v.*
> *Mississippi*, 606 F.2d 635, 637-38 (5th Cir. 1979); *Bagby v. Beal*, 606 F.2d 411,
> 415-16 (3d Cir. 1979); *Gagne v. Maher*, 594 F.2d 336, 344 (2d Cir. 1979), *aff'd*, 448
> U.S. 122, 65 L. Ed. 2d 653, 100 S. Ct. 2570 (1980); *Weisenberger v. Huecker*, 593
> F.2d 49, 53-54 (6th Cir.), *cert. denied*, 444 U.S. 880, 100 S. Ct. 170, 62 L. Ed. 2d
> 110 (1979); *Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir. 1978); (2) the Fair Housing Act
> of 1968, Pub. L. No. 90-284, § 812(c), 82 Stat. 88 (codified at 42 U.S.C. § 3612(c)
> (1982)), *see Hairston v. R & R Apartments*, 510 F.2d 1090 (7th Cir. 1975) (attorney
> entitled to a reasonable fee under section 3612(c)); and (3) Title VII, 42 U.S.C. §
> 2000e-5(k), *see Prandini v. National Tea Co.*, 585 F.2d 47, 52-53 (3d Cir. 1978).

13

The Third Circuit carefully explained why compensating attorneys for the time spent in fee litigation is necessary to effectuate the objectives underlying most attorneys' fee statutes:

> If an attorney is required to expend time litigating his fee claim, yet may not be compensated for that time, the attorney's effective rate for all the hours expended on the case will be correspondingly decreased. Recognizing this fact, attorneys may become wary about taking Title VII cases, civil rights cases, or other cases for which attorneys' fees are statutorily authorized. Such a result would not comport with the purpose behind most statutory fee authorizations, *viz*, the encouragement of attorneys to represent indigent clients and to act as private attorneys general in vindicating congressional policies. Indeed, courts have consistently held that attorneys may be awarded, under statutory fee authorizations, compensation for the expenses of and time spent litigating the issue of a reasonable fee -- *i.e.* for time spent on the fee application and successful fee appeals.

*Prandini*, 585 F.2d at 53 (citations omitted).

764 F.2d at 660

The instant action does not present the concerns reflected in the cases referred to above that involve the compensation of the costs involved in preparing statutorily provided for fee petitions in cases where the attorney fees are provided under a statutory fee provision. Additionally, the Court notes that in the cases relied upon by the Plaintiffs to support their position that attorney fees are available for the preparation of the fee motion in contempt proceedings, the three courts rely only upon cases that awarded statutory attorney fees and/or fees pursuant to a contractual attorney fee provision. For example, a sister district court in *Cricket Communications*, adopted an unopposed report and recommendation in which the Magistrate Judge relied upon *Coulter*, 805 F.2d 146, discussed *supra*. *See also Santa Fe Properties*, Inc., 2006 WL 4061184, at *3 (relying on all statutory attorney fee award cases, including *Coulter*); *LeMaster*, 581 F. Supp. at 1176 (relying on *Halderman v. Pennhurst State*

14

*School and Hospital*, 533 F. Supp. 649 (D. Pa 1982), which relied exclusively upon *Prandini*, discussed *supra*). Thus, these cases do not persuade this Court that awarding attorney fees for time spent pursuing the recovery of attorney fees is appropriate in the absence of the important policy motivations that underlie statutory fee provisions.

Therefore, the Court concludes that the Plaintiffs are not entitled to the $6,152.50 for the preparation and filing of the Plaintiffs' Motion for Attorney Fees or the $14,940.65 for the preparation and filing of the Plaintiffs' Renewed Motion for Attorney Fees. Accordingly, the Court **DENIES** the Plaintiffs' Renewed Motion for Attorney Fees as it relates to these two requests.

### 6. Reasonableness of Fees

The Defendants argue that the fee award the Plaintiffs are seeking should be reduced because (i) the rates charged were unreasonable and (ii) the time expended was unreasonable. In this regard, this Court has explained:

> When making a reasonableness determination, the Court should first calculate the "lodestar" amount, a multiple of the number of hours reasonably expended in the litigation and the reasonable hourly rate. *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 551 (6th Cir. 2008) (citing *Hensley* [*v. Eckhart*, 461 U.S. 424,] 433 [(1983)]. The petitioning attorney has an obligation to weed out hours that are excessive, redundant, or otherwise unnecessary from his or her fee request, *Hensley*, 461 U.S. at 434, and bears the burden of proving that the number of hours expended was reasonable, *Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999). Once a party has established that the number of hours and the rate claimed are reasonable, the lodestar amount is presumed to be the reasonable fee to which counsel is entitled. *Imwalle*, 515 F.3d at 552 (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1986)).

*Gunasekera v. Irwin*, 774 F. Supp. 2d 882, 887 (S.D. Ohio 2011) (parallel citation omitted).

Further, "deference is to be given to a district court's determination of a reasonable attorneys' fee[,]" as long as that court "provide[s] an adequate explanation of the reasons for its award and

15

the manner in which that award was determined." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) (citing *Hensley*, 461 U.S. at 437 and *Moore v. City of Paducah*, 790 F.2d 557 (6th Cir. 1986)).

### a. Hourly Rates

"To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Id.* (citing *Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000)). Here, in its Consent Judgment, the Court already determined that the Plaintiffs' attorneys' rates were reasonable, stating: "The Court has also reviewed the invoices submitted and finds the expenses are billed at a reasonable and customary rate." (Doc. 480 at 15.) *See also Gunasekera*, 774 F. Supp. 2d at 889–90 (finding similar rates reasonable).

Further, the Court notes that the Plaintiffs have submitted expert testimony of an experienced Columbus, Ohio attorney who practices in the same area as the Plaintiffs' counsel. That expert has submitted affidavit testimony on multiple occasions in this case, averring that the billing rates charged by the Plaintiffs' attorneys "are reasonable and are well within the range of rates charged by commercial litigation attorneys of similar experience in Central Ohio." (Quintin Lindsmith Aff. No. 1 at ¶ 22, Doc. No. 366-4; Aff. No. 2, Doc. No. 496-1 at ¶¶ 16; and Aff. No. 3 at ¶¶ 16, 30, Doc. No. 702-1.)

The only new issue in this regard is the Plaintiffs' attorneys' rate increases since the Court found their rates reasonable. Between 2007 and 2011, their rates increased between 3.38 percent and 4.65 percent. The Plaintiffs' attorneys maintain that their rate increase is reasonable

16

and in step with the prevailing increases in the relevant market.  This Court agrees.  The Ohio

State Bar Association's publication, *The Economics of Law Practice in Ohio*, reported that the

average billing rate for commercial litigation attorneys from 2007 through 2010 increased at an

annualized rate of 5.1%.  (Doc. No. 765 Exs. 1, 2.)  Consequently, the annual increases in the

Plaintiffs' counsels' billing rates are in line with market increases for Ohio commercial litigation

attorneys overall.  The Court therefore, finds that the Plaintiffs' attorneys' hourly rates are

reasonable.

### b. Time Expended

The Defendants argue that the amount of the Plaintiffs' fee award should be reduced

because they engaged in insufficiently documented block billing and because they charged for

duplicative work, clerical work, and time spent on subpoenas issued to California Gold

Marketing Group that were unrelated to the contempt proceedings.  The Court will address each

argument *seriatim*.

First, the Defendants take issue with the Plaintiffs' counsels' use of block billing.  The

Defendants concede that the use of block billing in and of itself is not improper in the attorney

fee context.  *See Renneker v .Commissioner of Social Security*, No. 1:10-cv-386, 2011 WL

6950510, at *8 (S.D. Ohio 2011) ("[T]he Court is able to ascertain the compensable work done

despite the two instances of block billing.  Accordingly, the Court declines to reduce the hours

on the basis of plaintiff's counsel's billing practices."); *United States ex. el. MacKay v.*

*Touchstone Research Laboratories, Ltd.*, No. 1:04-cv-327.009 WL 3150385, at *4 (S.D. Ohio

2009) (rejecting defendants' block billing argument because the time entries sufficiently

identified the subject mater of the work performed and the time expended).  Instead, the

Defendants posit that the block billing is unreasonable because "sentences describing work have been redacted that contributed a certain amount of time to the 'block bill,' the original number of hours were then reduced, theoretically, yet there is no evidence showing why those tasks constituted whatever length of time to which the number of hours was changed." (Doc. No. 740 at 13.) However, as the Plaintiffs correctly note, the entries in the billing statements that have been partially redacted are irrelevant because the Plaintiffs are not seeking to recover fees for redacted entries. (Steven W. Tigges Decl. ¶¶ 5-6, Doc. No. 702-6; Bradley T. Ferrell Decl. ¶¶ 5-6, Doc. No. 702-5; Ferrell Testimony, Doc. No. 816 at 23–28.) The unredacted time entries in the Plaintiffs' billing statements show that all of the work described in those entries relate to the prosecution and appeal of their Motion for Contempt. The Court reviewed these statements, the Plaintiffs' counsels' declarations and testimony, and is able to ascertain the compensable work within the block billing.

The Court next considers the Defendants contention that "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." (Doc. No. 740 at 13) (quoting *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989)). While the Defendants accurately state the law, the Court finds that the Plaintiffs are not requesting fees for purely clerical or secretarial tasks. Here, the time entries about which the Defendants complain show that the paralegal was assisting with document productions in response to the Defendants' discovery requests, and was assisting with financial compilations relating to the Plaintiffs' damages computation. These types of paralegal activities are compensable. *See e.g., Armstrong v. Receivables Performance Management, LLC*, No. 2:11–CV–0387, 2012 WL 404893, at *3 (S.D. Ohio Feb. 8, 2012) ("various activities that are properly performed by a paralegal,

18

including 'factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence'") (quoting *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n. 10 (1989)).

Third, the Court addresses the Defendants' claim that the Plaintiffs are seeking to recover fees for duplicative work. Review of the time entries, however, does not show duplicative work. Rather, they simply show that two attorneys both worked on certain matters, which is neither unreasonable nor prohibited. *See Armstrong*, 2012 WL 404893, at *3 ("Defendant has not cited any authority to support an argument that it is unreasonable or improper for two attorneys to bill for work done on similar tasks in the same matter."). The Plaintiffs' counsel sufficiently explained at the oral hearing why two attorneys worked on the same or similar tasks.

Last, the Court considers the Defendants assertion that time spent on subpoenas issued to California Gold Marketing Group were unrelated to the contempt proceedings. As the Plaintiffs explain, however, the Defendants are mistaken. That is, one of the matters at issue during the contempt proceedings was whether California Gold Marketing Group had ever issued sales reports to the Defendants. (Ferrell Testimony, Doc. No. 816 at 29–31.) The Defendants had denied receiving sales reports, and so the Plaintiffs caused subpoenas to be issued to California Gold Marketing Group to check the veracity of the Defendants' representations. The subpoenas were limited specifically to the issue of the sales reports. (Docs. No. 346, 347.) Thus, the work performed by the Plaintiffs' attorneys relating to the California Gold Marketing Group subpoenas is compensable.

### c. Reasonableness of Fees

The Court finds that the rates charged by the Plaintiffs' attorneys are consistent with the rates charged by attorneys of comparable skill and experience in Ohio. As such, they are reasonable under the lodestar standard followed by this Court. Likewise, the time spent by the Plaintiffs' attorneys on the matters at issue is reasonable and does not include any improper charges.

### III. Conclusion

Based on the foregoing, the Court (A) **GRANTS** the Plaintiffs' Supplemental Motion for Attorney Fees") (Doc, No. 767), and (B) **GRANTS IN PART AND DENIES IN PART** the Plaintiffs' Renewed Motion for Attorney Fees (Doc. No. 702) as follows:

1. The Court **GRANTS** the motion as it relates to the request for $80,026.85 that was incurred for prosecution of the Plaintiffs' Motion for Contempt.

2. The Court **DENIES** the motion as it relates to the Plaintiffs' request for $6,152.50 for the preparation and filing of the Plaintiffs' Motion for Attorney Fees.

3. The Court **GRANTS** the motion as it relates to the request for $54,473.75 that the Plaintiffs incurred in defending the Defendants' appeal of the Contempt Judgment.

4. The Court **DENIES** the motion as it relates to the Plaintiffs' request for $14,940.65 for the preparation and filing of the Plaintiffs' Renewed Motion for Attorney Fees.

**IT IS SO ORDERED.**

**June 25, 2013**
**DATE**

_s/Algenon L. Marbley_
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**



I CERTIFY THAT THIS IS A
TRUE AND CORRECT COPY OF THE
ORIGINAL FILED IN MY OFFICE
ON 6/25/13
Richard W. Nagel, Clerk of Court
By: Melissa Saddler
Deputy Clerk
Date: 2/11/15

20